(March 16, 1993)

■ CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, Appellant, v H.S.C. MANAGEMENT CORPORATION, Respondent. [594 NYS2d 761] —Order of the Supreme Court, New York County (Martin Schoenfeld, J.), entered August 20, 1991, which denied plaintiff's motion for summary judgment and granted defendant's cross-motion for partial summary judgment dismissing the complaint, is reversed, on the law, and plaintiff's motion for summary judgment granted without costs or disbursements. The Clerk is directed to enter judgment in favor of plaintiff in the total amount of $29,850.

The IAS Court held that notices of violation, which were served by mail upon defendant citing it for various violations of the Air Pollution Control Code, were unenforceable on the theory that they were not served personally.

There is no dispute that the violations were served in accordance with Administrative Code of the City of New York § 24-115. In finding this was not sufficient, the IAS Court relied on the following language of New York City Charter § 1404 (d) (2):

"(a) The environmental control board shall not enter any final decision or order pursuant to the provisions of paragraph one of this subdivision unless the notice of violation shall have been served in the same manner as is prescribed for service of process by article three of the civil practice law and rules or article three of the business corporation law, except that:

"(i) Service of a notice of violation of any provisions of the charter or administrative code * * * may be made by delivering such notice to a person employed by the respondent on the premises the occupancy of which caused such violation;

"(ii) service of a notice of violation of any provision of the charter or administrative code * * * may be made by affixing such notice in a conspicuous place to the premises, the occupancy of which caused such violation * * *

"(b) Such notice may only be affixed or delivered pursuant to items (i) and (ii) of subparagraph (a) of this paragraph where a reasonable attempt has been made to deliver such notice to a person in such premises upon whom service may

be made as provided for by article three of the civil practice law and rules or article three of the business corporation law".

However, these elaborate safeguards as to service are required only where the plaintiff Board administratively enters and dockets its judgments pursuant to section 1404 (d) (1) (e), which reads as follows: "Any final order of the board imposing a civil penalty, whether the adjudication was had by hearing or upon default or otherwise, shall constitute a judgment rendered by the board which *may* be entered in the civil court of the city of New York or any other place provided for the entry of civil judgments within the state, and *may* be enforced without court proceedings in the same manner as the enforcement of money judgments entered in civil actions" (emphasis added).

The legislative history confirms that the service requirements of section 1404 (d) (2) apply solely to administrative docketing of the Board's judgments. Prior to 1975, the Board did not have the authority to administratively docket any of its orders as judgments. It had to apply to the court to enter them. Thus, in 1975 to give the agency this additional power to administratively enter and docket its final decisions and orders, but also to provide additional safeguards as to notice, if this power were exercised, New York City Charter § 1404 was amended (L 1975, ch 329) to read as follows:

"4. (a) The environmental control board shall have power to enforce its final decisions and orders imposing civil penalties, not to exceed ten thousand dollars for each respondent, for violations of laws, rules and regulations enforced by it pursuant to subdivision three of this section as if they were money judgments, without court proceedings, in the manner described herein. After four months from the issuance of such a final decision and order by the board, a copy of such decision and order shall be filed in the office of the clerk of any county within the city. In the event that the decision and order was issued as a result of the respondent being in default, a notice of default shall be mailed to such respondent at least seven days before such filing, and a copy of such notice and a receipt of mailing therefor shall be filed with the copy of such decision and order. Upon such filing, such county clerk shall enter and docket such decision and order, in the same manner and with the same effect as a money judgment. Upon such entry and docketing, such decision and order may be enforced as provided in article fifty-two of the civil practice law and rules.

"(b) The environmental control board shall not enter any final decision or order *pursuant to the provisions of paragraph (a) of this subdivision* unless the notice of violation shall have been served in the same manner as is prescribed for service of process by article three of the civil practice law and rules or article three of the business corporation law.

"(c) The environmental control board *may* apply to a court of competent jurisdiction for enforcement of *any other* decision or order issued by such board or any subpoena issued by such board." (Emphasis added.)

As can be seen, the service provision for administrative docketing in paragraph (b) refers back and only applies when paragraph (a) is utilized by the Board. In 1977, New York City Charter § 1404 (4) (a) was repealed and reenacted as section 1404 (d) (1) by Local Laws, 1977, No. 24 of the City of New York. In 1984, section 1404 (d) (1) was repealed and a new paragraph (1) added (L 1984, ch 944, § 3). As a result of this legislation, the prior paragraph (1) of section 1404 (d), which had previously only consisted of the administrative docketing of judgments, became eight clauses, lettered (a) through (h). Thus, although the language in the service provision in the present statute, section 1404 (d) (2) (a), refers to "paragraph one of this subdivision", this legislative history shows it is intended to solely apply to the provision authorizing administrative docketing which, after 1984, is contained in section 1404 (d) (1) (e).

Section 1404 (d) (3), which provides that the Board *may* apply to a court for enforcement of any *other* decision or order, and which has been retained in the amended law, supports this interpretation of the plaintiff Board.

Since this construction which the agency advances reconciles both the Administrative Code and the Charter provisions regarding service, and it is not irrational or unreasonable, it is entitled to our deference *(see, Matter of Salvati v Eimicke,* 72 NY2d 784, 791). Concur—Murphy, P. J., Rosenberger and Asch, JJ.

Carro and Kassal, JJ., dissent in a memorandum by Kassal, J., as follows: I am in agreement with the IAS Court that the final orders of plaintiff, City of New York Environmental Control Board (ECB), assessing civil penalties totalling $25,600 against defendant, H.S.C. Management Corporation (HSC), are unenforceable. The orders were issued following HSC's default in answering notices charging it with violations of the Air Pollution Control Code. HSC claimed not to have received the

notices, which had been served by mail and not personally, as statutorily required. New York City Charter § 1404 (d) (2) provides, in pertinent part, as follows:

"(2) (a) The environmental control board shall not enter any final decision or order pursuant to the provisions of paragraph one of this subdivision unless the notice of violation shall have been served in the same manner as is prescribed for service of process by article three of the civil practice law and rules or article three of the business corporation law, except that:

"(i) service of a notice of violation of any provisions of the charter or administrative code the enforcement of which is the responsibility of * * * the commissioner of environmental protection * * * and over which the environmental control board has jurisdiction, may be made by delivering such notice to a person employed by the respondent on the premises the occupancy of which caused such violation;

"(ii) service of a notice of violation of any provision of the charter or administrative code, the enforcement of which is the responsibility of the commissioner of sanitation and over which the environmental control board has jurisdiction, may be made by affixing such notice in a conspicuous place to the premises, the occupancy of which caused such violation * * *

"(b) Such notice may only be affixed or delivered pursuant to items (i) and (ii) of subparagraph (a) of this paragraph where a reasonable attempt has been made to deliver such notice to a person in such premises upon whom service may be made as provided for by article three of the civil practice law and rules or article three of the business corporation law."

The ECB's argument that this personal service requirement applies only to the administrative docketing of judgments in court contradicts the very language of the statute, which makes no reference to "docketing", "judgment", "civil court", or "civil penalty". Surely, had the Legislature intended to limit section 1404 (d) (2) to administrative docketing, it would have so specified (see generally, Pajak v Pajak, 56 NY2d 394, 397).

Moreover, as observed by the IAS Court, the interpretation which the ECB would impose on the statutory scheme governing its notice and service requirements accords it a discretionary "end run" around the requirement of personal service. Thus, the ECB argues, it may serve by mail pursuant to Administrative Code of the City of New York § 24-115, so long as it then proceeds under section 1404 (d) (3), which permits it

to "apply to a court of competent jurisdiction for enforcement *of any other* decision or order issued by [ECB] or of any subpoena issued by such board" (emphasis added).

It is illogical for the Legislature to have enacted personal service notice provisions *(see,* NY City Charter § 1404 [d] [2] [a], [b]) that can be so easily avoided after the fact, by simply choosing the manner in which the judgment will be entered. Moreover, the statutory safeguards for personal service contained in section 1404 (d) (2) are designed to meet due process standards by ensuring that parties subject to civil penalties will be accorded "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections" *(Mullane v Central Hanover Trust Co.,* 339 US 306, 314; *see, Sterling v Environmental Control Bd.,* 793 F2d 52, *cert denied* 479 US 987).